UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOB ADISA AYANTOLA, | : |
| Plaintiff, | : |
| v. | : NO. 3:05CV957 (MRK) |
| COMMUNITY TECHNICAL COLLEGES OF THE STATE OF CONNECTICUT BOARD OF TRUSTEES, | : |
| Defendant. | : |

**RULING AND ORDER**

In this action, Mr. Ayantola, who is a deaf, black individual from Nigeria, sues his employer under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., for disability discrimination, and under Title VII of the Civil Rights Act for race, color, and national origin discrimination and for retaliation. Currently pending before the Court is Defendant's Motion for Summary Judgment [doc. # 24]. For the reasons that follow, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion for Summary Judgment.

**I.      Factual Background**

The parties are familiar with the factual background of this case, and the Court will not discuss it at length here. Mr. Ayantola was hired in the spring of 1987 as a sign language/interpreter instructor at Northwestern Connecticut Community College ("NCCC"). In the 1996-1997 academic year, he was promoted to Assistant Professor. He sought promotion to the position of Associate Professor beginning in 2001, and he was finally promoted to this position in 2005 by the newly-appointed president of NCCC, Ms. Barbara Douglass.

The claims in this case principally revolve around events in the two years before Mr. Ayantola was promoted. In 2000 and in 2002, Mr. Ayantola filed complaints with the Connecticut Commission on Human Rights & Opportunities ("CHRO") in which he claimed that he had been the victim of discrimination at NCCC. On August 13, 2003, he entered into a settlement agreement under which Mr. Ayantola released the Defendant from all claims of discrimination originating before that date, and the Defendant in this case agreed to implement certain procedures, including the handling of student complaints regarding Mr. Ayantola.

In April 2004, which was the next opportunity to promote Mr. Ayantola after settlement of the CHRO complaints, the then-President of NCCC, Dr. Eileen Baccus, who is African-American, failed to recommend Mr. Ayantola for promotion to the position of Associate Professor, despite the fact that in February 2004, the faculty promotion committee had recommended Mr. Ayantola for an associate professorship. Dr. Baccus instead ordered an outside investigation of student complaints against Mr. Ayantola, which he claims violated the August 13, 2003 CHRO settlement agreement. After the investigation concluded in June 2004, Dr. Baccus chose not to recommend Mr. Ayantola for promotion for that year, and he was not promoted.

Dr. Baccus retired in 2004, and Dr. Douglass was thereafter appointed the president of NCCC. In 2005, Mr. Ayantola was again recommended by the promotion committee. Unlike her predecessor, Dr. Douglass recommended Mr. Ayantola for promotion to the position of Associate Professor, and he was so promoted on April 15, 2005.

## II.    Preliminary Issues

The standard for considering a motion for summary judgment is well known. The Court adheres to the standards set forth in its opinions in *Pulaski v. Stratford Bd. of Educ.*, 2006 WL

2

2361724, at *1 (D. Conn. Aug. 15, 2006) and *Anderson v. England*, 359 F. Supp. 2d 213, 214-15 (D. Conn. 2005). The purpose of summary judgment is not to try the factual disputes, but instead to see if there are material factual disputes to try. That said, both parties have an obligation at this stage of the proceedings to point to admissible evidence that supports their claims and defenses. One cannot rely on speculation or conjecture or inadmissible hearsay, but must offer admissible evidence or evidence that can be submitted at trial in admissible form.

As noted above, Mr. Ayantola entered into a settlement agreement with the Defendant on August 13, 2003, releasing Defendant from all claims of discrimination originating before that date. Therefore, this lawsuit only includes instances of alleged discrimination or retaliation after August 13, 2003. Mr. Ayantola also raises in his brief an instance in September 2006 in which he and another deaf co-worker were not provided with a translator at what Mr. Ayantola alleges to have been a mandatory work meeting. To the extent Mr. Ayantola seeks recovery on the basis of this incident as an adverse action, the Court GRANTS Defendant's Motion for Summary Judgment. Mr. Ayantola neither included this claim in his complaint, nor sought to amend his complaint, and there is additionally no evidence in the record from which to infer that the Defendant's failure to provide a translator was for discriminatory or retaliatory reasons.

### III. Disability Discrimination Under Title II of the ADA

After careful consideration, the Court concludes that Title II of the ADA does not apply to employment actions, which must be brought under Title I of that Act. In reaching its conclusion, the Court adopts the reasoning of Judge Janet Bond Arterton in *Cormier v. City of Meriden*, No. Civ A.3:03CV1819(JBA), 2004 WL 2377079 (D. Conn. Sep. 30. 2004) and Judge Stefan Underhill in *Filush v. Town of Weston*, 266 F. Supp. 2d. 322 (D. Conn. 2003), and remains unpersuaded by the

3

analysis of this issue in *Transport Workers Union of Am., Local 100, AFL-CIO v. N.Y. City Transit Auth.*, 342 F. Supp. 2d 160 (S.D.N.Y. 2004). In view of the thoroughness of the opinions of Judges Arterton and Underhill, this Court sees no need to repeat here the reasoning contained in their opinions. Suffice it to say that the Court adopts their reasoning in its entirety as if it were fully set forth here. Therefore, the Court GRANTS Defendants' motion for summary judgment on Mr. Ayantola's disability discrimination claim under Title II of the ADA.

## IV. Retaliation Under Title VII

In order to establish a *prima facie* case of retaliation, under Title VII, Mr. Ayantola must present evidence sufficient to permit a rational trier of fact to find the following: (1) he engaged in protected participation or opposition under Title VII; (2) his employer was aware of this activity; (3) the employer took adverse action against Mr. Ayantola; and (4) a causal connection exists between his protected activity and the employer's adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *See Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). It is undisputed that Mr. Ayantola engaged in protected activity by filing his CHRO complaints, which were settled in August 2003. It is also undisputed that the Defendant was aware of this activity, and that Mr. Ayantola suffered an adverse employment action when Dr. Baccus failed to consider him for promotion to an Associate Professor. What remains at issue is causation.

The Second Circuit has taught that "[p]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . ; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Mr. Ayantola has satisfied his

*prima facie* burden of showing causation because Dr. Baccus failed to consider him for promotion at her very first opportunity after Mr. Ayantola settled his CHRO complaint, despite the fact that he was recommended for promotion by the promotion committee.

Once an employee makes out a *prima facie* case of retaliation, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Here, the Defendant has done so. According to Dr. Baccus, she did not recommend Mr. Ayantola for promotion because many students had complained in 2004 about Mr. Ayantola's classes and conduct and the parents of one student had even threatened legal action against NCCC because of Mr. Ayantola's teaching. Mr. Ayantola does not dispute that Dr. Bacchus's articulated rationale, if true, would constitute a legitimate, non-discriminatory reason for failing to promote Mr. Ayantola.

"Once the employer produces evidence of legitimate reasons for its actions, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the real reason for the adverse employment decision was discrimination." *Mandell v. County of Suffolk*, 316 F.3d 368, 381 (2d Cir. 2003). In support of his claim of unlawful retaliation, Mr. Ayantola points to Dr. Baccus's alleged failure to abide by the terms of the earlier CHRO settlement, which dictated that all students be referred first to him to resolve their complaints. He further cites her hiring of an outside investigator to assess the student complaints, which he claims was a unique reaction to claims of student dissatisfaction. He also emphasizes the results of the outside investigation, because the investigator concluded that certain students had a vendetta against Mr. Ayantola and that there was inadequate support for many of the students' complaints. Finally, he asserts that because the selection criteria for associate professorship was the same in 2004 as in 2005 and his own application was the same, the fact that he was promoted in 2005 by Dr. Douglass demonstrates discrimination by Dr. Baccus

5

in 2004. Finally, Mr. Ayantola points to the allegedly retaliatory manner in which his direct supervisor, Ms. Patti Owen, conducted an evaluation of his classroom in December 2003. Mr. Ayantola claims that Ms. Owen deliberately chose the end of the semester, a difficult time, to evaluate him and did not take the steps necessary to provide him with a peer evaluator, which he had requested. He also claims that Ms. Owen gave him an unwarranted, negative evaluation, and refused to remove negative comments from his file even after he rebutted the basis for them.

Defendant disputes each of Mr. Ayantola's claims, and cites evidence in its favor regarding both causation and pretext.. However, the Court is satisfied that there are genuine issues of material fact in dispute concerning causation and pretext, and that giving Mr. Ayantola the benefit of all reasonable inferences and taking the evidence in the light most favorable to him, a reasonable jury could conclude that Mr. Ayantola was a victim of retaliation. That said, the Court hastens to emphasize that a jury could also reasonably conclude that Dr. Baccus's action had nothing to do with Mr. Ayantola's prior CHRO complaints. In short, there are disputed issues of fact that a jury, not this Court, must resolve.

**V.     Race, Color, and National Origin Discrimination Under Title VII**

When a plaintiff alleges that an employer has engaged in race-based or origin-based discrimination, he must satisfy the burden-shifting test put forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Court has on numerous occasions restated the *McDonnell Douglas* test and what is required of a plaintiff pursuing a Title VII claim, and therefore, the Court will not repeat what it has previously written. Instead, the Court refers the parties to its decision in *Cuttino v. Genesis Health Ventures, Inc.*, 2006 WL 62833 (D. Conn. 2006). In assessing Defendant's motion, the Court has applied the standards set forth in that case.

6

At this stage of the proceedings, the Court must accept the facts in the light most favorable to Mr. Ayantola. Mr. Ayantola has sufficiently demonstrated that he is a member of three protected classes and that he sustained an adverse employment action. As noted previously, Mr. Ayantola does not dispute that the Defendant has proffered a legitimate, non-discriminatory reason for not promoting him in 2004. However, Mr. Ayantola contends–and the Court agrees–that, accepting all facts in favor of Mr. Ayantola and drawing all inferences in his favor, there is a disputed issue of material fact on the issue of whether Dr. Baccus's stated reason for failing to recommend Mr. Ayantola in April 2004 was pretextual and whether the real reason for that decision related to Mr. Ayantola's race, color, or national origin. Mr. Ayantola also claims that he was discriminated against by his supervisor, Ms. Owen, a Caucasian-American, in her evaluation of his classroom in the winter of 2003.

Defendant disputes that Ms. Owen's evaluation rises to the level of an adverse employment action–although it is clear that Ms. Owen had some input into Dr. Baccus's decision whether to promote Mr. Ayantola–and Defendant also disputes causation as it relates to Dr. Bacchus's decision. However, the Court concludes that there are genuine issues of material fact which preclude summary judgment. Moreover, since the same evidence must be presented to the jury on Mr. Ayantola's retaliation claim as would be required to prove his claims of race, color, and national origin discrimination, the Court finds that the proper course of action is to have a jury decide whether Dr. Baccus's articulated reason was pretextual, and if so, whether her real reason for deciding not to recommend Mr. Ayantola's promotion was retaliation or discrimination.

V.     **Conclusion**

In sum, the Court GRANTS the Motion for Summary Judgment [doc. # 24] as to Mr.

7

Ayantola's claim of disability discrimination, and any claims of race, color, or national origin discrimination or retaliation that originate in events before August 13, 2003 and after Ms. Baccus's failure to recommend Mr. Ayantola in June 2004.  The Court DENIES the Motion for Summary Judgment [doc. # 24] as to Mr. Ayantola's Title VII retaliation claim and race, color, and national origin discrimination claims originating in actions between August 13, 2003 and June 2004.  The claims remaining after this decision involve Ms. Owen's evaluation of Mr. Ayantola in the winter of 2003 and Dr. Baccus's failure to recommend Mr. Ayantola for promotion to Associate Professor in 2004.

The Court cannot help but add that it hopes that both Mr. Ayantola and Defendant will with the issuance of this decision, resolve to put their efforts and their resources toward their primary, constructive, and beneficial mission–the education of students–and will seek to put their unfortunate acrimony behind them.

IT IS SO ORDERED.

/s/      Mark R. Kravitz      
    United States District Judge

**Dated at New Haven, Connecticut: <u>March 30, 2007</u>**.